**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**PAUL LEWIS, individually**                                                    **PLAINTIFFS**
**and on behalf of H.D.L., a minor**

**v.**                                                    **No. 3:23-cv-00056-MPM-JV**

**DONNA FLOYD, et al.**                                                    **DEFENDANTS**

<u>**ORDER**</u>

This matter is before the Court on the Motion to Dismiss [14] filed by Defendants Donna

Floyd and YoungWilliams on May 31, 2023. Mr. Lewis, who is proceeding pro se, has filed no

response despite ample time within which to do so.[1] This is the decision of the Court.

**BACKGROUND**

Plaintiff Lewis brings a series of claims individually and on behalf of H.D.L., a minor,

arising out of an incident that occurred on August 22, 2022, at the "official office of the M.S. Dept.

of Child Support." [10]. Mr. Lewis names Defendant Floyd "in her individual capacity acting

under the color of law" and Defendant YoungWilliams as "Contractor for the M.S. Dept of Human

Services Division of Child Support Enforcement, in the company's individual capacity and acting

under the color of law." [10].[2]

---

[1] Mr. Lewis has filed an independent Motion for Summary Judgment [17] that neither mentions nor responds to Defendants' Motion to Dismiss. Mr. Lewis filed the Motion for Summary Judgment though the case was stayed pending resolution of the Motion to Dismiss.

[2] Defendant YoungWilliams, P.C., notes that it is a corporation organized under Mississippi law. YoungWilliams contracts with the Mississippi Department of Human Services ("MDHS"), Child Support Division, to provide "certain child support services to the various recipients of Title VI-D benefits under the Social Security Act. [15] at 2. YoungWilliams has offices throughout the State of Mississippi and employs Ms. Floyd as the District Manager of its Oxford, Mississippi, location. *Id.*

Mr. Lewis's amended complaint sketches the following factual allegations.[3] Mr. Lewis states that he visited the YoungWilliams office in Oxford, Mississippi, to deliver notarized papers and other materials relating to his child support case. *Id.* Office staff received the papers around 1:20 p.m., and Mr. Lewis scheduled an appointment for 2:00 p.m. *Id.* He returned to the office a few minutes before 2:00. *Id.* Mr. Lewis used a personal body camera to record his interactions at the office. *Id.* YoungWilliams has a policy prohibiting any use of recording devices in the office, as the office handles sensitive family matters with privacy concerns (the "Policy"). *Id.*[4] Ms. Floyd, the District Manager at the office, advised Mr. Lewis of the Policy. *Id.* Mr. Lewis declined to cease recording. *Id.* Ms. Floyd called her supervisor, after which Ms. Floyd reiterated that Mr. Lewis had to stop recording. *Id.* Mr. Lewis again refused, and so Ms. Floyd called the police. *Id.* Police officers arrested Mr. Lewis and required him to leave the building. *Id.*

Mr. Lewis asserts that the defendants violated his rights under the First, Ninth, and Fourteenth Amendments of the Constitution and caused him "to be illegally arrested and kidnapped." *Id.* at 4. Mr. Lewis contends that the defendants "caused defamation of character under color of law due to the illegal arrest" and violated "Mississippi constitution 6th, 11th, 16th, and 32nd under the color of law." *Id.* Mr. Lewis seeks $2,000,000 in compensatory damages, among other things. *Id.* at 6. Defendants seek dismissal on multiple grounds, including, without limitation, failure to state a claim upon which relief may be granted.[5]

---

[3] At the motion to dismiss stage, the Court accepts as true the well-pleaded allegations of the complaint. The Court makes no factual findings at this point.

[4] Defendants state that the Policy "provides that clients [such as Mr. Lewis] are not permitted to record interview or other encounters in any Mississippi Child Support Office, including those interactions in the office lobby or interview rooms." [15] at 3. The policy provides that "all clients shall receive notice of the prohibition through an advisory flyer posted in the lobby and interview rooms of each office." *Id.* If staff suspect a recording is being made, staff are required to inform clients of the policy. *Id.* The policy instructs staff "to terminate communication and request that the client leave the premises if he or she fails to comply with the Policy." *Id.* According to Defendants, the Mississippi Department of Human Services approved the Policy in 2019.

[5] Other grounds Defendants raise include defective service of process and the improper naming of Defendant YoungWilliams in the summons.

**LEGAL STANDARDS**

A district court may not grant a motion to dismiss simply because a plaintiff fails to respond to the motion. *Servicios Azucareros de Venezuela, C.A. v. John Deer Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012). Instead, a court must assess the legal sufficiency of the complaint. *Id.* To survive a Rule 12(b)(6) motion, the plaintiff's complaint must assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is the duty of the trial judge to hold *pro se* complaints to less stringent standards than proper pleadings drafted by lawyers. *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976). But the Court is not required "to create a cause of action where there is none." *Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021). Nor is the Court required to give the *pro se* litigant the opportunity to amend when such an amendment would be futile. *Id.*

**DISCUSSION**

A.    *Federal Claims*

1.    **State-Action Doctrine**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted). To the extent Plaintiff Lewis brings claims under the 42 U.S.C. § 1983 and the Constitution, a threshold issue is whether Defendants qualify as "state actors." The Supreme Court's "state-action doctrine distinguishes the government from individuals and private entities." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). "Under the Court's cases, a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the states.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).

"[T]o qualify as a traditional, exclusive public function within the meaning of [the Supreme Court's] state-action precedents, the government must have traditionally *and* exclusively performed the function." *Id.* at 929 (emphasis in original).

The relevant function in this case is the provision of "certain child support services to the various recipients of [Title IV-D] benefits under the Social Security Act." [15] at 2. Title IV of the Social Security Act concerns "grants to states for aid and services to needy families with children and for child-welfare services." 42 U.S.C. § 601. Part D of Title IV concerns "child support and establishment of paternity." 42 U.S.C. § 651. The MDHS ensures the provision of such public welfare services, a traditional and exclusive government function, through its contract with YoungWilliams. The Court finds that in providing these services on behalf of MDHS, YoungWilliams satisfies the state-action doctrine and acts under color of law.

### 2.    Eleventh Amendment Immunity

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States and by its own citizens." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002). Immunity also extends to state agencies that are considered "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Sovereign immunity deprives federal courts of jurisdiction over suits against a state, state agency, or state official in his or her official capacity "unless that state has waived sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015). A third exception exists under *Ex parte Young*, which allows suit against a state official acting in his or her official capacity "as long as the lawsuit seeks prospective relief to redress an ongoing violation of federal law." *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). In determining whether the *Ex parte Young* exception applies, the district court "need only conduct a straightforward inquiry in to whether the

4

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Williams ex rel. J.L. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

The Court has found that YoungWilliams satisfies the state action doctrine as to the conduct alleged in this case. Consequently, the Court lacks jurisdiction to consider Plaintiff's claims against YoungWilliams for federal constitutional violations except to the extent, if any, the claims fall within the *Ex parte Young* exception to sovereign immunity.

### 3.       First Amendment Claim

Plaintiff Lewis contends that YoungWilliams's Policy prohibiting the use of recording devices in its Oxford child support services office, as applied to him, amounts to a prior restraint on speech in violation of the First Amendment. "Ratified in 1791, the First Amendment provides in relevant part that 'Congress shall make no law . . . abridging the freedom of speech.'" *Halleck*, 139 S. Ct. at 1928. The Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable to the States. "[R]estrictions on filming can implicate the First Amendment, at least to some extent. And the extent of constitutional protections for the right to film is subject to ongoing and vigorous debate – particularly when, as in this case, third parties' privacy rights are threatened." *Nat'l Press Photographers Ass'n. v. McCraw*, 90 F.4th 770, 788 (5th Cir. 2024). More than ten years ago, the Seventh Circuit held that "[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of free speech and press rights as a corollary of the right to disseminate the resulting recording." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). More recently, the Fifth Circuit held that there exists "a right to film the police in the course of their public duties . . . [because] the underlying principles of the First Amendment counsel[] us to safeguard the right of people to hold government officials accountable – filming them in the course of their duties being one way to do that." *Turner v.*

*Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017). In *Turner*, the Fifth Circuit emphasized that "the right to film the police is not unqualified. The right extends only to filming police performing their public duties in public places. And even then, the right is 'subject to reasonable time, place, and manner restrictions.'" *Nat'l Press*, 90 F.4th at 789 (quoting *Turner*, 848 F.3d at 699). The Fifth Circuit has held that "restrictions on the right to film – not just police but in general – are subject to at least some level of First Amendment scrutiny." *Id.*

In considering whether a restriction on protected speech violates the Free Speech Clause, the court must determine "the character of the forum in which expression was regulated." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757 (5th Cir. 2010). Three types of forums exist: "(1) traditional and designated public forums; (2) limited public forums; and (3) nonpublic forums." *Id.* at 757-58. "Traditional public forums include sidewalks, streets, and parks that the public since time immemorial has used for assembly and general communication." *Id.* at 758. A state may also "intentionally create 'designated' public forums on state property for the same widespread use as traditional public forums." *Id.* Strict scrutiny, requiring a compelling justification and narrow tailoring, applies to the regulation of speech in traditional or designated public forums. *Id.*

"Limited public forums – as the name suggests – provide for public expression of particular kinds or by particular groups." *Id.* (internal quotation omitted). Intermediate scrutiny applies to the regulation of speech in limited public forums. The government may restrict speech in limited public forums "as long as the regulation (1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum." *Id.* (internal quotation omitted). "A restriction based on subject matter may be permissible if it preserves the purposes of that limited forum." *Id.* (internal quotation omitted). Intermediate scrutiny "is the default level of scrutiny applicable to laws . . . which do not directly regulate the contact of speech and which pose

a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Nat'l Press*, 90 F.4th at 790 (internal quotation omitted).

The Court finds that the office Mr. Lewis identifies, in which YoungWilliams provides "certain child support services to the various recipients of [Title IV-D] benefits under the Social Security Act" on behalf of the MDHS, is a limited public forum. Intermediate scrutiny applies to the Policy. There is no allegation that the Policy is content-based. To the contrary, the Policy as detailed in the pleadings is content-neutral, prohibiting recording of any sort for any reason. Moreover, the Policy is reasonable in light of the purpose served by the forum. The provision and enforcement of child support services involves sensitive family matters, and the Policy protects the privacy of members of the public. Because the Policy survives intermediate scrutiny, Plaintiff's claim under the First Amendment fails as to both YoungWilliams and Ms. Floyd.[6]

### 4.   Remaining Federal Claims

To the extent Plaintiff brings other federal claims, the claims are misguided and fail. He alleges violations of 18 U.S.C. §§ 241 and 242, but these are criminal statutes and have no private right of action. He alleges violations of the Ninth and Fourteenth Amendments but makes no factual allegations that could provide the basis for such a claim. Plaintiff claims that he was "falsely arrested," but neither of the defendants arrested Plaintiff. According to Plaintiff's complaint, Ms. Floyd simply called the police and reported her observations. That is neither an arrest nor

---

[6] The Court notes that the First Amendment claim as to Ms. Floyd also fails because she is entitled to qualified immunity regarding the claim. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted). To rebut a qualified immunity defense, a plaintiff has the burden of showing that "(1) the official violated a statutory or constitutional right" and that "(2) the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks omitted). Even assuming for the purpose of argument that a First Amendment violation occurred here, the right was not clearly established, and qualified immunity protects Ms. Floyd.

tantamount to an arrest, contrary to Mr. Lewis's contention. Mr. Lewis fails state a claim of false arrest or imprisonment against either of the defendants.

      B.     *State Law Claims*

Plaintiff claims that Defendants violated "Mississippi constitution 6th, 11th, 16th, and 32nd under the color of law." The provisions to which he refers address the regulation of government; peaceful assemblage and right to petition government; ex post facto laws and impairment of contract; and the construction of enumerated rights. None of Plaintiff's factual assertions explain or support any violation of the provisions he identifies.

To the extent Plaintiff claims that Defendants violated his civil rights when Defendant Floyd asked him to leave the premises and called the police, he fails to state a claim upon which relief may be granted. Mississippi businesses may refuse to serve a customer and may require him or her to depart the premises for any reason other than an unlawful discriminatory reason. *See, e.g.*, *Lee v. MGM Resorts Miss., Inc.*, 200 So. 3d 1129, 1138 (Miss. Ct. App. 2016); *Kelly v. Beau Rivage Resorts, Inc.*, 184 F. App'x 364, 365 (5th Cir. 2006). The complaint indicates that Defendant Floyd asked Mr. Lewis to leave because he refused to comply with the Policy and not for any unlawful discriminatory reason. Mr. Lewis's claim based on Defendants' request that he leave the premises fails.

Similarly, Plaintiff has failed to state a claim of "defamation of character." It appears that he premises this claim on Defendant Floyd's phone call and statement to the police. Under Mississippi law, a claim of defamation requires "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Wells Fargo Fin. Leasing, Inc. v. Pope*, No. 2:15-cv-160,

2017 WL 114408 (S.D. Miss. Jan. 11, 2017) (quotation marks omitted). The factual allegations of the complaint simply do not support a defamation claim. The complaint indicates that Mr. Lewis refused to comply with the Policy and refused to depart the premises and that Ms. Floyd reported precisely that to the police – in other words, she made a true statement. Nor was her report a publication to a third party – according to the complaint, she reported the information directly to the police. There is no basis for a defamation claim to proceed.

CONCLUSION

For these reasons, the Court finds that Plaintiff Lewis fails to state a claim upon which relief may be granted. The case must be dismissed.

**ACCORDINGLY, IT IS ORDERED**: Defendants' Motion to Dismiss [14] is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**. Plaintiff's Motion for Privilege of Electronic Device [7] and Motion for Summary Judgment [17] are **DENIED AS MOOT**. This case is **CLOSED**.

**SO ORDERED** this the 14th day of March, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**